IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRIAN BEASLEY, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | No. 3:24-CV-1430-K | |
| § | | |
| CITY OF FARMERS BRANCH, TEXAS, § | | |
|     Defendant. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

On May 5, 2025, Defendant City of Farmers Branch, Texas, ("Farmers Branch") filed a motion for summary judgment (Dkt. No. 29 ("MSJ")), brief in support (Dkt. No. 30 ("MSJ Br.")), and appendix (Dkt. No. 31 ("MSJ App.")).  On June 6, 2025, Plaintiff Brian Beasley ("Beasley") filed a response (Dkt. No. 38 ("Resp.")), brief in support (Dkt. No. 39 ("Resp. Br.")), and appendix (Dkt. No. 40 ("Resp. App.")).  On July 3, 2025, Farmers Branch filed a reply.  (Dkt. No. 45 ("Reply").)  United States District Judge Ed Kinkeade referred the motion to the undersigned United States Magistrate Judge for hearing, if necessary, and for findings and recommendation on the disposition of the motion.  (Dkt. No. 43.)

Based on the relevant filings and applicable law, the undersigned recommends that the motion be **GRANTED**.

**I.  BACKGROUND**

Beasley was employed by Farmers Branch as its Director of Human Resources for nearly 10 years beginning in 2013.  (Resp. App. 3.)  In December 2022, Benjamin

Williamson became the City Manager of Farmers Branch. (MSJ App. 1.) As City Manager, Williamson was Beasley's direct supervisor. (MSJ App. 1.) Shortly after becoming City Manager, Williamson instituted a new policy requiring all city contracts to be prepared and approved by the City Attorney's office. (MSJ App. 1–2.) Williamson informed all of Farmers Branch's department heads, including Beasley, of this new policy. (MSJ App. 1–2, 11.)

After being made aware of the new policy on city contracts, Beasley drafted and signed on behalf of Farmers Branch a document titled "Consulting Services Agreement." (*See* MSJ App. 6-9.) The Agreement was "entered into by and between the City of Farmers Branch . . . and Stephanie Goegel[.]" (MSJ App. 6.) It identified Stephanie Goegel as an independent contractor and stated that the city would pay her $46 per hour to perform "Consulting Services on an 'as needed' basis for the City." (MSJ App. 6-9.) Both Beasley and Goegel signed this agreement on January 26, 2023; Beasley did so on behalf of Farmers Branch. (MSJ App. 9.) Beasley drafted this document without any input or approval from the City Attorney's Office. (MSJ App. 2; Resp. App. 5.)

On February 20, 2023, Williamson fired Beasley for insubordination, pointing to the "Consulting Services Agreement" as a contract drafted without the approval of the City Attorney's office in direct violation of city policy. (MSJ App. 10.) When he was given this explanation for his termination, Beasley was surprised, insisting that agreements like this one were done "on a regular basis" and that he "would have

never thought this was insubordination." (MSJ App. 25.) Beasley does not dispute that he was aware of the city policy or that he drafted the document without input from the City Attorney's office, (*See* Dkt. No. 1 ("Compl."); Resp. Br.), but he maintains that he was never insubordinate because the document he drafted was not a contract (Resp. App. 5). After Beasley's termination, Williamson hired Yoko Matsumoto, a 49-year-old woman, to replace Beasley as Farmers Branch's Director of Human Resources. (MSJ App. 5.)

On June 21, 2023, Beasley filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that, in firing him, Farmers Branch discriminated against him on the basis of his age, sex, and race. (MSJ App. 11–12.) On February 8, 2024, Beasley received Notices of Right to Sue from the EEOC and the Department of Justice, Civil Rights Division. (Compl. at 5–6.) On May 6, 2024, Beasley sued Farmers Branch in federal court, alleging employment discrimination on the basis of his age, sex, and race in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII"), and the Texas Commission on Human Rights Act, Tex. Lab. Code §§ 21.051–21.061 ("TCHRA"). (Compl. at 4–9.) Beasley, a white male, was 53 years old at the time of his firing. (Resp. App. 3.)

## II. LEGAL STANDARDS

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying the portions of the record "it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute as to a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Anderson*, 477 U.S. at 251–52).

The court views all facts and inferences in the light most favorable to the nonmoving party, *id.* at 540, and it "avoid[s] credibility determinations and weighing of the evidence," *Dabbasi v. Motiva Enter.*, 107 F.4th 500, 505 (5th Cir. 2024) (quoting *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015)). When the nonmoving party bears the burden of proof at trial, the moving party may demonstrate entitlement to summary judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmoving party's claim or

(2) showing that there is no evidence to support an essential element of the nonmoving party's claim. *Celotex*, 477 U.S. at 322–25.

If the moving party makes this initial showing, the burden shifts to the nonmoving party to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). This burden cannot be satisfied with "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Id.* at 1075 (cleaned up). Rather, the nonmoving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992)).

### III. ANALYSIS

#### A

The ADEA "prohibit[s] an employer from discharging an employee on account of that employee's age." *Goudeau*, 793 F.3d at 474; *see* 29 U.S.C. § 623(a)(1). Title VII makes it unlawful for an employer to discriminate against an employee on the basis of his race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). The TCHRA provides parallel protections under state law, making it unlawful for an employer to discharge an employee because of his "race, color, disability, religion, sex, national origin, or age." Tex. Lab. Code § 21.051. Courts

assess allegations of employment discrimination under these statutes by applying a common framework analysis. *Goudeau*, 793 F.3d at 474 (explaining that claims brought under the ADEA and TCHRA are typically evaluated under the same framework used for Title VII discrimination claims); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) ("[The TCHRA] is effectively identical to Title VII . . . [and] we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA." (citations omitted)). In the absence of direct evidence—evidence "which, if believed, proves the fact [of discriminatory intent] without inference or presumption," *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005)—discrimination claims can be proven via circumstantial evidence under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

Under the three-part, burden-shifting *McDonnell Douglas* framework, "a plaintiff must first set forth a prima facie case of discrimination." *Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016) (citing *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015)). If the plaintiff makes this showing, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason" for the adverse employment action. *Goudeau*, 793 F.3d at 474 (citing *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005)). "This burden on the employer is only one of production, not persuasion, involving no

credibility assessments." *Russell*, 235 F.3d at 222. If the employer produces a satisfactory explanation for the action, the burden shifts back to ultimately rest with the plaintiff to show that the employer intentionally discriminated against them. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000).

For Title VII and TCHRA claims, the employee at this stage must show "either (1) the reason stated by the employer was a pretext for discrimination, or (2) the defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor." *Goudeau*, 793 F.3d at 475 (quoting *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439–40 (5th Cir. 2012)); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). The ADEA, however, imposes a higher standard; the employee must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Squyres v. Heico Co.*, 782 F.3d 224, 231 (5th Cir. 2015) (quoting *Reeves*, 530 U.S. at 143). This requires the employee to show that discrimination was a "but-for" cause of the employer's action. *Id.* (quoting *Burrage v. United States*, 571 U.S. 204, 212 (2014)).

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450

U.S. 248, 253 (1981)). The "salutary function of summary judgment" when it comes to allegations of employment discrimination is that it "allows patently meritless cases to be nipped in the bud." *Molden v. East Baton Rouge Parish School Board*, 715 F. App'x 310, 313 (5th Cir. 2017) (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017)). If the plaintiff is unable at this point in the case to "offer sufficient evidence to create a genuine issue of material fact" regarding the question of discrimination, summary judgment will be granted, and the case will be resolved. *Rachid*, 376 F.3d at 312 (citation omitted).

**B**

To establish a prima facie case of discrimination under Title VII and the TCHRA, Beasley must show that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Morris*, 827 F.3d at 400 (citations omitted); *see also AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (requiring substantially similar elements under the TCHRA).

To establish a prima facie case of age discrimination under the ADEA, Beasley must demonstrate that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by

someone younger, or iii) otherwise discharged because of his age." *Goudeau*, 793 F.3d at 474 (quoting *Machinchick*, 398 F.3d at 350).

The undersigned assumes, without deciding, that Beasley has established a prima facie case of discrimination based on one or more protected characteristic—race, sex, or age. The burden now shifts to Farmers Branch to articulate a legitimate, nondiscriminatory reason for Beasley's termination. Farmers Branch has met this burden by producing evidence that it terminated Beasley's employment because of his insubordination and violation of the city's new policy on drafting contracts. *See Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167–68 (5th Cir. 1999) ("The failure of a subordinate to follow the direct order of a supervisor is a legitimate nondiscriminatory reason for discharging that employee.").

## C

Because Farmers Branch has met its burden of production, the burden shifts back to Beasley to produce evidence that would enable a reasonable jury to find, for his ADEA claim, that his age was the but-for cause of his termination, and, for his Title VII and TCHRA claims, either that Farmers Branch's proffered reason was pretextual or that a "motivating factor" for Beasley's termination was his race, sex, or age. To establish pretext, Beasley must show that Farmers Branch's "proffered explanation is false or unworthy of credence." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (citation and internal quotation marks omitted). Beasley has failed to meet this burden.

In his summary judgment response, Beasley does not dispute that he was aware of the new city policy on contract drafting or that he prepared the "Consulting Services Agreement" between the city and Goegel without approval from the City Attorney's office. (*See* Resp. Br. at 10–11.) Beasley nevertheless argues that Farmers Branch's proffered legitimate nondiscriminatory reason for terminating Beasley's employment is false because the agreement Beasley drafted was not a legally enforceable employment contract; Beasley drafted the agreement from a document provided to the city's department directors by the City Attorney's office to cover when former employees complete old work assignments; department directors regularly prepared agreements of this nature without input from the City Attorney's office during Beasley's tenure with Farmers Branch; and the $460 value of the agreement was "a *de minimis* amount." (*Id.* at 5, 7.)

These allegations can be distilled down to a single argument: that Farmers Branch's proffered reason for firing Beasley—violating city policy—must be pretextual because Beasley's conduct did not actually violate city policy. But this line of argument betrays a fundamental misunderstanding of the inquiry undertaken at the third stage of the *McDonnell Douglas* framework. To establish pretext, it is not enough for the plaintiff to merely show that the employer's decision was "wrong or mistaken," because "the factual dispute at issue is whether a discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or

competent." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 331 (3rd Cir. 1995) (citations and internal quotation marks omitted).

To support his case, Beasley relies upon his own affidavit as his principal summary judgment evidence. (Resp. App. 3–6.) It is riddled with precisely the "conclusory allegations" and "unsubstantiated assertions" that "are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citations and internal quotation marks omitted). But even assuming Beasley has provided sufficient summary judgment evidence to demonstrate that "the decisionmakers at [Farmers Branch] were incorrect that [Beasley]'s conduct . . . violated [city p]olicy, this is an insufficient basis to enable a reasonable jury to find pretext." *Barnard v. L-3 Commc'n Integrated Sys. L.P.*, No. 3:16-CV-0282-D, 2017 WL 3726764, at *9 (N.D. Tex. Aug. 30, 2017) (citations omitted).

Suppose Beasley were to establish that the agreement in question was drafted and approved by the City Attorney's office in full compliance with city policy. The fact that Williamson's initial "reasonable belief" that Beasley was insubordinate "eventually proves to have been incorrect . . . would not change the conclusion that the firing had been non-discriminatory." *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 816 (5th Cir. 1993). Here, Beasley does not dispute that he drafted the document alone. His disagreement with Farmers Branch is instead over whether the document was a contract within the meaning and scope of the new city policy.

Beasley contends that agreements like the "Consulting Services Agreement" he drafted were "done regularly pursuant to [city] policy" throughout his tenure with Farmers Branch and were based on a "document form" that the City Attorney's office had provided to departmental directors for use when departing employees agreed to complete projects after their official term of employment had ended. (Resp. App. 5.)  But even if these assertions were supported by the evidence Beasley points to, they would not create a genuine fact issue with respect to Farmers Branch's account of events—Williamson specifically changed city policy, away from how things had been done for the first nine years of Beasley's tenure with the city, to require all city contracts be prepared and approved by the City Attorney's office. (MSJ App. 1–2.)

All Beasley has shown is that he and Williamson differed in their understandings of the meaning of the new policy. (Resp. Br. at 5 ("These types of agreements were simply not considered contracts requiring approval.").)  But just as the ADEA, Title VII, and the TCHRA were "not intended to be . . . vehicle[s] for judicial second-guessing of business decisions," neither were they "intended to transform the courts into personnel managers" for local government. *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 647 (5th Cir. 1985) (citing *Elliott v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983)).  Williamson set the new policy on city contracts and explained it to Beasley.  When it came to his attention that Beasley then drafted and executed an agreement on behalf of Farmers Branch to

pay a former employee in exchange for consulting services, it was reasonable for Williamson to view this as a violation of city policy. Farmers Branch "did not violate Title VII," the ADEA, or the TCHRA "if it acted on a reasonable belief" about violating city policy. *Dickerson v. Metro. Dade Cty.*, 659 F.2d 574, 581 (5th Cir. Unit B Oct. 1981).

Crucially, Beasley has produced no evidence that would enable a reasonable jury to find that Williamson did not actually believe that Beasley's conduct violated the new policy on city contracts. Nor has he provided any evidence to support a finding that his termination was motivated at least in part by wrongful discrimination on account of his age, sex, or race. "A discharge may well be unfair or even unlawful yet not be evidence of . . . bias under the ADEA," Title VII, or the TCHRA. *See Moore*, 990 F.2d at 819. There is no "demonstrated connection" here between the employment actions taken by Farmers Branch and Beasley's age, sex, or race "other than [Beasley's] bald assertion that one exists." *Id.* Accordingly, these allegations are not enough to carry Beasley's burden under the third step of the *McDonnell Douglas* framework.

Beasley also attempts to establish pretext or a discriminatory motive by relying on a disparate treatment theory. (Resp. Br. at 4, 6, 9–10.) "Disparate treatment occurs where an employer treats one employee more harshly than other similarly situated employees for nearly identical conduct." *Vaughn*, 665 F.3d at 637 (citations and internal quotation marks omitted). An employee "may establish pretext . . .

through evidence of disparate treatment" between themselves and another employee outside of their protected class. *Watkins v. Tregre*, 997 F.3d 275, 283 (5th Cir. 2021) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

Beasley alleges that Farmers Branch had "a policy, habit and custom of always utilizing progressive discipline before discharging" any of its employees, "including management and director-level employees." (Resp. Br. at 4.) His contention is that, even if he had been insubordinate, Farmers Branch was discriminatory when it skipped the normal step of giving him progressive discipline and instead moved directly to terminate his employment. But "[f]ailure to follow internal procedures is generally not enough to create a genuine issue of fact as to discriminatory motives." *Grubb v. Southwest Airlines*, 296 F. App'x 383, 390 (5th Cir. 2008) (citing *Moore*, 990 F.2d at 819). What Beasley must show, and what he alleges, is that similarly situated "employees of different ethnicities, younger employees, and female employees were given progressive discipline" while he was not. (Resp. Br. at 4). Beasley is unsuccessful because he has failed to submit sufficient evidence to support a finding that the five employees he cites as comparators in his response brief and affidavit were similarly situated to him.

The Fifth Circuit has been clear that an employee's proffered comparators must be "nearly identical" to him in order to sustain a disparate treatment claim. *See Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018). Employment actions occur under nearly identical circumstances only when the two

adversely affected employees "held the same job or responsibilities," worked under "the same supervisor or had their employment status determined by the same person," had "essentially comparable violation histories," and, critically, were punished for nearly identical conduct. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009) (citations omitted).

For each of the five comparators Beasley names, he provides their respective position (departmental director or manager) and the progressive discipline they received before being discharged (verbal warnings, write ups, performance improvement plans, or anger management classes). (Resp. Br. at 6; Resp. App. 4.) But Beasley has failed to submit any evidence that these coworkers were disciplined for conduct "nearly identical" to his insubordination, and he has not explained when any of his coworkers' misconduct or adverse employment actions occurred.

An appropriate comparator for Beasley would be a fellow department head with similar work responsibilities, supervised by Williamson, who was insubordinate in violating city policy or disobeying an order from Williamson. Williamson only became City Manager in December 2022, three months before firing Beasley in February 2023. Unless these other adverse employment actions occurred around this three-month window, they would have been carried out by a different supervisor. "In light of the complete lack of evidence concerning the nature and extent of the deficient conduct engaged in by" Beasley's nonwhite, younger, or female coworkers or the identity of the supervisor overseeing them at the time the conduct occurred,

"comparing the disciplinary measures [Farmers Branch] took with respect to [Beasley] to those it took with respect to his coworkers provides no relevant information regarding whether race," age, or sex was a motivating factor in Beasley's termination. *Taylor v. Peerless Indus. Inc.*, 322 F. App'x 355, 366 (5th Cir. 2009) (citations omitted). Accordingly, Beasley has failed to demonstrate pretext or a discriminatory motive through disparate treatment.

### D

The undersigned revisits the assumption that Beasley has established a prima facie case with respect to one facet of his discrimination claims. Farmers Branch also seeks summary judgment on Beasley's age discrimination claim by arguing that he is unable to establish the fourth element of a prima facie case due to the age difference between him and Matsumoto. (MSJ Br. at 9.) Establishing a prima facie case of discrimination "requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996) (cleaned up). When the plaintiff alleges age discrimination, "such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger." *Id.* at 313. Rather, the prima facie case is only made when the plaintiff can show that his replacement was "substantially younger." *Id.* at 313.

In *Rachid v. Jack in the Box, Inc.*, the Fifth Circuit explained that it was "a close question" whether a five-year age gap was "significant" or "substantial" enough to

-16-

raise an inference of age discrimination. *Id.* at 313. The court left this "close question" unanswered when it resolved the case on other grounds. *See id.* But in *Earle v. Aramark Corp.*, 247 F. App'x 519, 523 (5th Cir. 2007), the Fifth Circuit held that a four-year age difference between a terminated employee and her replacement was "an insignificant age difference that is not sufficient to support a prima facie case of age discrimination," (citations omitted).

Albeit unpublished and nonbinding, *Earle*'s reasoning is sound and persuades the undersigned that Beasley is unable to satisfy his "burden to show that [he] was replaced by someone younger or outside of the protected class." *Id.* At the time of his firing, Beasley was 53 years old. (Resp. App. 3.) Matsumoto was 49 years old when she was hired as Beasley's replacement. (MSJ App. 5.) Beasley was replaced by someone within the protected class, and his replacement was not "substantially younger" than he was. *O'Connor*, 517 U.S. at 313. Because Beasley has failed to establish a prima facie case of age discrimination, his claim also fails on this independent basis.

## IV.    RECOMMENDATION

For the reasons stated, the undersigned **RECOMMENDS** that the District Judge **GRANT** Defendant Farmers Branch's Motion for Summary Judgment (Dkt. No. 29) and **DISMISS WITH PREJUDICE** Plaintiff Beasley's claims in this case.

**SO RECOMMENDED** on October 28, 2025.

                                                  _____
                                                  BRIAN McKAY
                                                  UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).